1  TIMOTHY W. LOOSE, SBN 241037
      tloose@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
3  Los Angeles, CA 90071-3197
   Telephone:  213.229.7746
4  Facsimile:   213.229.6746

5  DEREK K. KRAFT (*pro hac vice*)
      dkraft@gibsondunn.com
6  M.J. KIRSCH (*pro hac vice*)
      mjkirsch@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Avenue, N.W.
8  Washington, DC 20036-5306
   Telephone:  202.955.8500
9  Facsimile:   202.467.0539

10  *Attorneys for Defendant Kimberly-Clark Corporation*

11

12                  **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                    **SAN FRANCISCO DIVISION**

15  JUDAH ROSENWALD, CRAIG COURAKI-       Case No. 3:22-cv-04993-LB
    LEWIN, CINDY RUTTER, WILLIAM
16  RUTTER, TRINITY GUEVREMONT,           **DEFENDANT KIMBERLY-CLARK**
    NATASHA GARAMANI, JAMES SMITH,        **CORPORATION'S NOTICE OF MOTION**
17  PATRICIA PEREZ, JEANINE ECKERT, and   **AND MOTION TO DISMISS PLAINTIFFS'**
    PRESTON LESCHINS, on behalf of        **AMENDED CLASS ACTION COMPLAINT**
18  themselves and all others similarly situated,
                                          Hon. Laurel Beeler
19                     Plaintiffs,
                                          Hearing
20         v.                             Date:      April 20, 2023
                                          Time:      9:30 a.m.
21  KIMBERLY CLARK CORPORATION, and       Location: Courtroom B
    DOES 1-10,
22
                       Defendants.
23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1    **TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD**:

2          PLEASE TAKE NOTICE THAT on April 20, 2023, at 9:30 a.m., or as soon thereafter as it

3    may be heard, in Courtroom B of this Court, located at 450 Golden Gate Avenue, San Francisco, Cal-

4    ifornia, Defendant Kimberly-Clark Corporation ("Defendant" or "Kimberly-Clark") will and hereby

5    does move this Court for an order under Federal Rules of Civil Procedure 12(b)(1), (b)(2) and (b)(6)

6    dismissing Plaintiffs' Amended Class Action Complaint.

7          Plaintiffs bring eleven causes of action against Kimberly-Clark, all stemming from their alle-

8    gation that reasonable consumers are duped into buying Kleenex® Germ Removal Wet Wipes.  The

9    face of the package states that the product "wipes away 99% of germs from skin" with "no harsh

10   chemicals" and reinforces this message with a banner in all caps that says "WIPES AWAY."  Plain-

11   tiffs apparently did not read these statements, because they claim that they expected the wipes to kill

12   all germs in their path by using chemical germicides.  Because the wipes do not contain germicides,

13   Plaintiffs complain that they did not get the product they wanted.  But no reasonable consumer could

14   read the label and conclude the product would decimate germs.  The name of the product is "Germ

15   Removal," and the package states that the wipes work by wiping away germs without the use of any

16   harsh chemicals.  Plaintiffs notably do not attach any images of the product label to either their initial

17   or Amended Complaint, but the Court can (and should) consider it because the central question in any

18   false advertising case is what the label says.  Here, the label says exactly what the product delivered,

19   and the Amended Complaint should be dismissed without leave to amend for several reasons:

20         _First_, eight of the ten Plaintiffs are not residents of California and do not allege making their

21   purchases here, and Kimberly-Clark is a Delaware corporation headquartered in Texas.  These non-

22   resident Plaintiffs' attempt to sue in California for purchases made elsewhere offends due process and

23   requires dismissal for lack of personal jurisdiction.

24         _Second_, all of the Plaintiffs' consumer protection claims require allegations of fact plausibly

25   demonstrating that a "reasonable consumer" would be deceived.  The Amended Complaint fails this

26   standard because no reasonable consumer could read the label and conclude that the product would

27   kill germs through the use of chemical germicides.

28         _Third_, Plaintiffs cannot sustain their state law claims because they have failed to adequately

1   plead the key elements of those claims under Rule 9(b), including injury, causation, and materiality.

2   Plaintiffs obtained exactly what the label represented: a wet disposable cloth that wipes away germs.

3        *Fourth*, the claims of Plaintiffs Garamani, Guevremont, and Cindy Rutty require dismissal for

4   the additional reason that the laws of these Plaintiffs' home states impose other limitations on suit,

5   none of which Plaintiffs can meet.

6        *Finally*, Plaintiffs cannot maintain their claims for prospective relief in the form of injunctive

7   or declaratory remedies because they admit that Kimberly-Clark discontinued the product.  Dismissal

8   of these claims seeking prospective relief is therefore required under Rule 12(b)(1).

9        Kimberly-Clark bases this Motion upon this Notice of Motion, the accompanying Memoran-

10  dum of Points and Authorities and Exhibit A thereto, all cited authorities, all pleadings and papers on

11  file in this action, and such oral argument and other evidence as the Court shall consider prior to or at

12  the time of hearing on this Motion.

13

14  Dated:  February 22, 2023                    GIBSON, DUNN & CRUTCHER LLP

15

16                                              By:   */s/ Timothy W. Loose*
                                                      Timothy W. Loose
17                                                    Derek K. Kraft
                                                      M.J. Kirsch
18

19                                              *Attorneys for Defendant Kimberly-Clark*
                                                *Corporation*
20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-04993-LB

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II.  STATEMENT OF THE ISSUES TO BE DECIDED ............................................................ 2

III. SUMMARY OF ALLEGATIONS ........................................................................................ 3

IV.  THE LEGAL STANDARDS GOVERNING THIS MOTION ............................................ 4

V.   ARGUMENT ........................................................................................................................ 5

    A.   The Court Lacks Personal Jurisdiction To Adjudicate Eight Out-Of-State Plaintiffs' Claims. ......................................................................................................... 5

    B.   No Reasonable Consumer Would Interpret The Label As Plaintiffs Do. .................... 7

        1.   The Product Never States That It "Kills" Germs, And Makes Clear That It Removes Germs By Wiping Them Away. .............................. 8

        2.   Comparisons To Other Products Refute Plaintiffs' Reading Of The Label. ......................................................................................................... 11

    C.   Plaintiffs Have Not Pled The Elements Of Their State Law Claims With The Particularity Required By Rule 9(b). ................................................................. 13

        1.   Plaintiffs Have Not Adequately Pled Statutory Injury. ................................ 14

        2.   Plaintiffs Have Not Adequately Pled Causation Or Actual Reliance. ........................................................................................................ 18

        3.   Plaintiffs Have Not Adequately Pled Materiality. ........................................ 20

    D.   Plaintiffs Garamani, Guevremont, And Cindy Rutter Additionally Cannot Satisfy Other Elements Of Their State Consumer Fraud Laws. ................................ 20

        1.   The CCPA Does Not Authorize Damages In This Putative Class Action. ............................................................................................................ 21

        2.   Plaintiff Cindy Rutter Failed To Satisfy The Wyoming CPA's Notice Requirement. ..................................................................................... 21

    E.   Plaintiffs Have No Standing to Seek Injunctive or Declaratory Relief. .................... 22

VI.  CONCLUSION ................................................................................................................... 23

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. ConAgra Foods, Inc.*,
   331 F.R.D. 641 (N.D. Cal. 2019) .................................................................................18

*Allen v. Wells Fargo, N.A.*,
   2015 WL 5137953 (E.D. Pa. Aug. 27, 2015) ...............................................................17

*Alvarez v. Bank of Am. Corp.*,
   2014 WL 3767669 (S.D. Fla. July 31, 2014) ...............................................................19

*Arcand v. Bro. Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ..............................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................4, 5

*Babaian v. Dunkin' Brands Grp., Inc.*,
   2018 WL 11445613 (C.D. Cal. June 12, 2018) ...............................................15, 16, 17

*Bauer v. Texas*,
   341 F.3d 352 (5th Cir. 2003) ........................................................................................22

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ...................................................................................5, 14

*Behnke v. Ahrens*,
   294 P.3d 729 (Wash. Ct. App. 2012) ..............................................................................8

*Bell v. Publix Super Mkts. Inc.*,
   982 F.3d 468 (7th Cir. 2020) ...........................................................................................9

*Big-O Tires v. Santini*,
   838 P.2d 1169 (Wyo. 1992) .............................................................................................8

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ..........................................................................................16

*Borenkoff v. Buffalo Wild Wings, Inc.*,
   2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ..................................................................17

*Boysen v. Walgreen Co.*,
   2012 WL 2953069 (N.D. Cal. July 19, 2012) ...............................................................15

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156 (2018) ...........................................................................................9

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) .............................................................................................................7

*Broderick v. Dairyland Ins. Co.*,
   270 P.3d 684 (Wyo. 2012) .......................................................................................................22

*Brown v. Van's Int'l Foods, Inc.*,
   2022 WL 1471454 (N.D. Cal. May 10, 2022) ........................................................................19

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ...................................................................................................5

*Carter v. Ethicon Inc.*,
   2021 WL 1893749 (W.D. Wash. May 11, 2021)....................................................................14

*Cheslow v. Ghirardelli Chocolate Co.*,
   445 F. Supp. 3d 8 (N.D. Cal. 2020) .......................................................................................12

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)...................................................................................................................22

*Colella v. Atkins Nutritionals, Inc.*,
   348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) ...........................................................................17

*DaCorta v. AM Retail Grp., Inc.*,
   2018 WL 557909 (S.D.N.Y. Jan. 23, 2018)............................................................................17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...............................................................................................................5, 6

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)...............................................................................................5, 22

*Debernardis v. IQ Formulations, LLC*,
   942 F.3d 1076 (11th Cir. 2019)...............................................................................................16

*Eberhart v. LG Elecs. USA, Inc.*,
   2015 WL 9581752 (D.N.J. Dec. 30, 2015) ..............................................................................8

*Ebner v. Fresh Inc.*,
   838 F.3d 958 (9th Cir. 2016)....................................................................................................8

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007).....................................................................................................14

*Fink v. Ricoh Corp.*,
   365 N.J. Super. 520 (2003) .....................................................................................................19

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
   141 S. Ct. 1017 (2021)...............................................................................................................7

*Friedman v. Dollar Thrifty Auto. Grp., Inc.,*
  2015 WL 4036319 (D. Colo. July 1, 2015) ...................................................21

*Genomics v. Song,*
  2022 WL 2204361 (N.D. Cal. Mar. 25, 2022).................................................7

*In re Gilead Scis. Sec. Litig.,*
  536 F.3d 1049 (9th Cir. 2008)...........................................................................5

*Hadley v. Kellogg Sales Co.,*
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) .....................................................1, 14

*Hajro v. U.S. Citizenship & Immigration Servs.,*
  811 F.3d 1086 (9th Cir. 2016)........................................................................22

*Harris v. McDonald's Corp.,*
  2021 WL 2172833 (N.D. Cal. Mar. 24, 2021)...............................................17

*Hill v. Roll Int'l Corp.,*
  195 Cal. App. 4th 1295 (2011) ......................................................................13

*Horti v. Nestlé HealthCare Nutrition, Inc.,*
  2022 WL 2441560 (N.D. Cal. July 5, 2022)...................................................17

*Hughes v. Ester C Co.,*
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) .............................................................8

*Hunt v. U.S. Tobacco Co.,*
  538 F.3d 217 (3d Cir. 2008)...........................................................................20

*Izquierdo v. Mondelez Int'l, Inc.,*
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................................................17

*Jackson-Mau v. Walgreen Co.,*
  2023 WL 366913 (E.D.N.Y. Jan. 24, 2023) ..................................................16

*Jessani v. Monini N. Am., Inc.,*
  744 F. App'x 18 (2d Cir. 2018) ........................................................................8

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab.
  Litig.,*
  903 F.3d 278 (3d Cir. 2018)...........................................................................15

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)........................................................................14

*Keegan v. Am. Honda Motor Co.,*
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ...........................................................14

Gibson, Dunn &
Crutcher LLP

*Kennard v. Kellogg Sales Co.*,
2022 WL 4241659 (N.D. Cal. Sept. 14, 2022) ........................................................................10, 11

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017).............................................................................................................8

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ...................................................................................................................18

*Leon v. Cont'l AG*,
301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..........................................................................................14

*Luci v. Overton, Russell, Doerr & Donovan, LLC*,
789 F. App'x 895 (2d Cir. 2019) ...................................................................................................20

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020) ..........................................................................................18

*Madrigal v. Hint, Inc.*,
2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ..............................................................................23

*Martinez v. Mead Johnson & Co.*,
2022 WL 15053334 (C.D. Cal. Oct. 22, 2022) ..............................................................................11

*Martinez v. Nash Finch Co.*,
886 F. Supp. 2d 1212 (D. Colo. 2012) ...........................................................................................21

*Matanky v. Gen. Motors LLC*,
370 F. Supp. 3d 772 (E.D. Mich. 2019)..........................................................................................21

*May Dep't Stores Co. v. State ex rel. Woodard*,
863 P.2d 967 (Colo. 1993) ..............................................................................................................18

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale
Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) .............................15

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020)...........................................................................................................16

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ..........................................................................................................8, 9

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)..............................................................................................................4

*Murphy v. Toyota Motor Sales USA Inc.*,
2020 WL 10354129 (C.D. Cal. Nov. 24, 2020).............................................................................21

*Murtagh v. Bed Bath & Beyond Inc.*,
    2020 WL 4195126 (D. Colo. July 3, 2020), *report and recommendation adopted*,
    2020 WL 4193553 (July 21, 2020) ...............................................................................21

*Myers v. Bennett Law Offices*,
    238 F.3d 1068 (9th Cir. 2001)..........................................................................................7

*Naimi v. Starbucks Corp.*,
    798 F. App'x 67 (9th Cir. 2019) ...............................................................................16, 17

*Nelson v. MillerCoors LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ............................................................................9

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F. Supp. 3d 1050 (C.D. Cal. 2015) ....................................................................19, 20

*Owens v. Nat. Emphasis Ltd.*,
    2022 WL 596837 (9th Cir. Feb. 28, 2022) (Mem.) .........................................................6

*Parent v. Millercoors LLC*,
    2016 WL 3348818 (S.D. Cal. June 16, 2016) ...............................................................12

*Pierre v. Healthy Beverage, LLC*,
    2022 WL 596097 (E.D. Pa. Feb. 28, 2022) ................................................................6, 8

*Piescik v. CVS Pharm., Inc.*,
    576 F. Supp. 3d 1125 (S.D. Fla. 2021) ...............................................................8, 9, 13

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) .........................................................................19

*Puri v. Costco Wholesale Corp.*,
    2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) ..............................................................11

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015)........................................................................................6

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) ........................................................................................6

*Renfro v. Champion Petfoods USA, Inc.*,
    25 F.4th 1293 (10th Cir. 2022) ......................................................................................8

*In re Riddell Concussion Reduction Litig.*,
    77 F. Supp. 3d 422 (D.N.J. 2015) ................................................................................17

*Robinson v. Avis Rent A Car Sys., Inc.*,
    22 P.3d 818 (Wash. Ct. App. 2001) ........................................................................18, 20

*Roffman v. Perfect Bar, LLC,*
    2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ..............................................................................19

*Ross v. Abbott Vascular Inc.,*
    2020 WL 4934487 (N.D. Cal. Apr. 6, 2020) ................................................................................3

*Sample v. Johnson,*
    771 F.2d 1335 (9th Cir. 1985)....................................................................................................22

*In re Samsung Galaxy Smartphone Litig.,*
    2018 WL 1576457 (N.D. Cal. Mar. 30, 2018)..............................................................................7

*Scheuerman v. Nestle Healthcare Nutrition, Inc.,*
    2012 WL 2916827 (D.N.J. 2012)..................................................................................................8

*Shaeffer v. Califia Farms, LLC,*
    44 Cal. App. 5th 1125 (2020) ..............................................................................................12, 13

*Solo v. Bed Bath & Beyond, Inc.,*
    2007 WL 1237825 (D.N.J. Apr. 26, 2007) ................................................................................19

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020)......................................................................................................22

*Sud v. Costco Wholesale Corp.,*
    731 F. App'x 719 (9th Cir. 2018) ..............................................................................................18

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)...................................................................................................................22

*Tabak v. Apple Inc.,*
    2020 WL 9066153 (N.D. Cal. Jan. 30, 2020)) ..........................................................................14

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.,*
    992 F. Supp. 2d 962 (C.D. Cal. 2014) ......................................................................................15

*Tiller v. State Farm Mut. Auto. Ins. Co.,*
    549 F. App'x 849 (11th Cir. 2013) ............................................................................................22

*In re Tobacco II Cases,*
    207 P.3d 20 (Cal. 2009) .......................................................................................................18, 19

*Tucker v. Pac. Bell Mobile Servs.,*
    208 Cal. App. 4th 201 (2012) ....................................................................................................18

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC,*
    898 F. Supp. 2d 1213 (D. Colo. 2012) ......................................................................................14

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)....................................................................................................14

DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-04993-LB

Gibson, Dunn &
Crutcher LLP

*Weinberg v. Sun Co.*,
  777 A.2d 442 (Pa. 2001) ..................................................................................................18

*Williams v. Purdue Pharma Co.*,
  297 F. Supp. 2d 171 (D.D.C. 2003) .................................................................................15

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017)...........................................................................................6

*Yee v. Select Portfolio, Inc.*,
  2018 WL 2938877 (N.D. Cal. June 12, 2018) ..................................................................3

**Statutes**

Colo. Rev. Stat. § 6-1-113(2) ...................................................................................................21

Wyo. Stat. Ann. § 40-12-108(a)...............................................................................................18

Wyo. Stat. Ann. § 40-12-109 ...................................................................................................22

**Other Authorities**

Ctr. for Disease Ctrl. & Prevention, *Frequent Questions About Hand Hygiene*,
  https://www.cdc.gov/handwashing/faqs.html#:~:text=Washing%20hands%20with
  %20soap%20and,types%20of%20germs%20and%20chemicals (last reviewed
  Nov. 29, 2022) ...................................................................................................................9

Pampers Fresh Scented Baby Wipes, Target,
  https://tinyurl.com/26ppey3w (last visited Nov. 29, 2022) ............................................12

Kimberly-Clark Corp., Quarterly Report (Form 10-Q) (Oct. 25, 2022),
  https://www.sec.gov/ix?doc=/Archives/edgar/data/55785/000005578522000074/k
  mb-20220930.htm .............................................................................................................3

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................................5

DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-04993-LB

Gibson, Dunn &
Crutcher LLP

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

3

Kimberly-Clark understands that people are on the move and do not always have access to

4

soap and running water when life's messes arise.  So it launched Kleenex Germ Removal Wet Wipes,

5

which provided consumers the ability to wipe away germs anytime, anywhere, without the use of any

6

harsh chemicals:

7

8

9

10

11

12

13



14

15

16

17

18

19

20

21

22

*See also* Ex. A.[1]

23

Plaintiffs do not and cannot allege that the wipes failed to deliver on any of the statements ap-

24

pearing on the label.  Instead, they claim to have been misled because they wanted a product that

25

would not only wipe away germs, but use the power of chemical germicides to beat them to death.

26

27

[1]  The Court may take judicial notice of the label on the "germ removal" product.  *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) ("[C]ourts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging." (internal quotation marks omitted)).

28

It is hard to imagine how Plaintiffs could pick up the product depicted above and believe that it would contain germicidal agents.  The product differentiates itself by stating it has "no harsh chemicals," and a banner on the front label reads "WIPES AWAY" in all capital letters, next to a statement that the product "safely wipes away 99% of germs from skin."  The name of the product—"germ removal" wet wipes—also reinforces that the product works by removing germs from skin, not slaying them on contact.  This is precisely the kind of case the Ninth Circuit has held should be dismissed at the pleadings stage, because no reasonable consumer could be misled.

There are four additional reasons, too, for dismissing Plaintiffs' Amended Complaint.  *First*, there is no personal jurisdiction over Kimberly-Clark with respect to eight Plaintiffs' claims.  None of these nonresident Plaintiffs alleges making any purchases in California, and because Kimberly-Clark is not "at home" here, it cannot be sued in California absent forum-specific contacts with Plaintiffs.  *Second*, Plaintiffs cannot state a claim under the consumer protection laws of the states in which they reside because, in addition to advancing a defective deception theory, they fail to plead the basic elements of their state law claims with the particularity that Rule 9(b) demands—including the elements of injury, causation, and materiality.  *Third*, the claims of Plaintiffs Garamani, Guevremont, and Cindy Rutter require dismissal for the additional reason that the laws of these Plaintiffs' home states impose other limitations on suit, none of which Plaintiffs can meet.  *Finally*, no Plaintiff has standing to seek injunctive or declaratory relief because the product is no longer being manufactured by Kimberly-Clark and Plaintiffs have an adequate remedy at law for their purported harms.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

1.   Whether the Court lacks personal jurisdiction to adjudicate claims involving an out-of-state Defendant, out-of-state Plaintiffs, and out-of-state purchases.

2.   Whether reasonable consumers would believe that a "germ removal" wipe with "no harsh chemicals" that "wipes away" germs from skin would kill germs on contact when the product label never made any representations about killing germs or making use of germicidal ingredients.

3.   Whether Plaintiffs have pled the core elements of their state law claims, including injury, reliance, and materiality, with the particularity required by Rule 9(b).

4.   Whether the claims of Plaintiffs Garamani, Guevremont, and Cindy Rutter require

DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-04993-LB

Gibson, Dunn &
Crutcher LLP

1   dismissal for the additional reason that these Plaintiffs cannot meet other limitations on suit imposed

2   by their states' consumer fraud laws.

3        5.     Whether Plaintiffs have standing to pursue injunctive or declaratory relief when the

4   product at issue has been discontinued for years and when they have an adequate legal remedy.

5   **III.   SUMMARY OF ALLEGATIONS**

6        Defendant Kimberly-Clark Corporation ("Defendant" or "Kimberly-Clark") is a global con-

7   sumer products company incorporated in Delaware and headquartered in Dallas, Texas.[2]  Kimberly-

8   Clark previously manufactured a "germ removal" wet wipe product under the Kleenex® brand; the

9   product has been discontinued for a couple of years now.  Am. Compl. ¶¶ 4, 35.  Sample photographs

10  of the "germ removal" product packaging are attached as Exhibit A to this Motion.  *See* Ex. A.

11       Plaintiffs are ten alleged purchasers of the wipes.  Am. Compl. ¶ 1.  At the time of purchase,

12  only Plaintiffs Rosenwald and Chouraki-Lewin claim to be California residents; the other eight Plain-

13  tiffs were residents of Colorado, Florida, New Jersey, New York, Pennsylvania, and Wyoming when

14  making their purchases.  *Id.*  Plaintiff Chouraki-Lewin also claims to have been a Washington resi-

15  dent during the class period, and therefore brings claims under Washington law as well.

16       Plaintiffs allege that they each bought the product online or in drug stores in their home states

17  at some point in 2020 or the first half of 2021, paying somewhere between $0.99 and $14.03 for dif-

18  ferent quantities of the product.  *Id.* ¶¶ 32, 34.  Aside from these skeletal allegations, the Amended

19  Complaint is devoid of individual facts about Plaintiffs.  It does not include allegations about why

20  each particular named Plaintiff bought the "germ removal" product, for how much he or she bought

21  it, what specific labeling statements each Plaintiff read or saw before buying it, or what amount of

22  their purchase price was a "premium," if at all.

23       Instead, Plaintiffs offer only vague, generalized recitations that they "purchased the 'Germ

24  removal' product believing, based upon [the] product's representations, that this product had capa-

---

25   

26  [2]  *See* Kimberly-Clark Corp., Quarterly Report (Form 10-Q) (Oct. 25, 2022), https://www.sec.gov/ix
    ?doc=/Archives/edgar/data/55785/000005578522000074/kmb-20220930.htm.   The Court may take

27  judicial notice of corporate filings on government websites.  *Yee v. Select Portfolio, Inc.*, 2018 WL
    2938877, at *4 & n.4 (N.D. Cal. June 12, 2018).  The Court may also look to matters beyond the

28  complaint when assessing its ability to exercise personal jurisdiction.  *Ross v. Abbott Vascular Inc.*,
    2020 WL 4934487, at *5 (N.D. Cal. Apr. 6, 2020).

Gibson, Dunn &
Crutcher LLP

bilities that the product does not, in fact, have."  Am. Compl. ¶ 24.  The "capabilities" that Plaintiffs apparently wanted in the product were *germicidal* capabilities, which the wipes do not have and never claimed to have.  *Id.* ¶¶ 12, 15, 16.  As Plaintiffs themselves acknowledge, "[t]here are no germicidal ingredients . . . in the 'germ removal' product," *id.* ¶ 10, a fact that the product's front label highlights through statements that it "wipes away" germs using "no harsh chemicals."  The absence of chemical germicides is further confirmed by the ingredients list on the back of the package, in which "[t]he only operative ingredients in the product are mild surfactants, i.e., soaps, or cleansers." *Id.*; *see* Ex. A.  The back label additionally states that the product is "alcohol free" and "paraben free," and depicts a person using the wipes on her hands and stowing the wipes in a bag for travel. Am. Compl. ¶ 18; *see* Ex. A. Despite these on-the-package statements about how the product works and what its ingredients are, the Amended Complaint concludes that "[c]onsumers . . . think that they have bought a product that eliminates germs just like an alcohol germicide."  Am. Compl. ¶ 23. Plaintiffs maintain these alleged misrepresentations were particularly pernicious for consumers during the COVID-19 pandemic.  *Id.* ¶¶ 19–20.

Plaintiffs bring ten causes of action under eight different states' consumer fraud laws, as well as an eleventh cause of action under the federal Declaratory Judgment Act.  Am. Compl. ¶¶ 41–94.[3] Plaintiffs purport to bring these claims on behalf of a nationwide class or, alternatively, on behalf of classes in (i) California alone; (ii) California, Colorado, Florida, New Jersey, New York, Pennsylvania, Washington, and Wyoming; or (iii) any state with consumer protection statutes that "are materially the same as those of California.  *Id.* ¶¶ 36–40.

## IV.     THE LEGAL STANDARDS GOVERNING THIS MOTION

Rule 8 requires plaintiffs to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (allegations must be based on "non-conclusory 'factual content[]'").  A complaint must allege more than "the mere possi-

---

[3]  Plaintiffs bring claims under the following states' consumer protection statutes:  California (CLRA, UCL, and FAL), Washington (CPA), Wyoming (CPA), Colorado (CCPA), Pennsylvania (UTPCPL), New York (NY GBL §§ 349, 350), New Jersey (NJCFA), and Florida (FDUTPA).

DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-04993-LB

bility of misconduct"; it must include "enough facts" to make the claim "plausible on its face." *Iqbal*, 556 U.S. at 679, 697 (internal quotation marks omitted); *see also id.* at 678 ("[A] complaint must contain sufficient factual matter . . . to state a claim to relief[.]" (internal quotation marks omitted)). And while the court generally accepts as true all factual allegations in a complaint, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the presumption of truth. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). This is especially true in the product-labeling context, where courts routinely must resort to "judicial experience and common sense" in separating plausible claims of consumer deception from the implausible. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Iqbal*, 55 U.S. at 679).

Where, as here, the plaintiffs' claims sound in fraud, they must also satisfy the "heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims 'state with particularity the circumstances constituting fraud or mistake.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). This includes "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

## V.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction To Adjudicate Eight Out-Of-State Plaintiffs' Claims.

By their own allegations, eight of the ten Plaintiffs neither reside in California nor bought the "germ removal" product in this state. For this Court to exercise personal jurisdiction over the claims of these eight Plaintiffs, they must show that Kimberly-Clark is "at home" in California (supporting general jurisdiction) or that their claims arise from Kimberly-Clark's forum-related conduct (supporting specific jurisdiction). Plaintiffs can do neither.

Nonresident defendants are subject to the general jurisdiction of a forum state if they are "essentially at home" there, which, for a corporation, is ordinarily the place of incorporation or where it maintains its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). If a corporate defendant meets neither of these "paradigmatic circumstance[s]," general jurisdiction may

Gibson, Dunn & Crutcher LLP

1   lie "only if the corporation's connections to the forum state 'are so continuous and systematic'" as to

2   render it "rightly at home" there.  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020–22 (9th Cir.

3   2017) (citing *Daimler*, 571 U.S. at 139).

4          Here, Plaintiffs seem to acknowledge that Kimberly-Clark, which is incorporated in Delaware

5   and headquartered in Texas, does not satisfy the "paradigmatic" case for general jurisdiction.  *See*

6   Am. Compl. ¶ 2.  Instead, they insist that Kimberly-Clark's activities in California—including the

7   presence of four "executive[s]," three undefined Kimberly-Clark "locations," a manufacturing plant,

8   and a California law disclaimer on Kimberly-Clark's website—render Kimberly-Clark "essentially at

9   home" here.  *Id.* ¶ 2.  But these meek California connections are not enough:  The Ninth Circuit has

10  held that general jurisdiction does not become "appropriate wherever a corporation 'engages in a sub-

11  stantial, continuous, and systematic course of business,'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070

12  (9th Cir. 2015); otherwise, personal jurisdiction would lie in every state where Kimberly-Clark oper-

13  ates.  *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be

14  deemed at home in all of them.  Otherwise, 'at home' would be synonymous with 'doing business.'").

15  "Moreover, the general jurisdiction inquiry examines a corporation's activities worldwide—not just

16  the extent of its contacts in the forum state." *Ranza*, 793 F.3d at 1070.  In this case, Plaintiffs do not

17  even begin to compare Kimberly-Clark's very modest California contacts with its extensive activities

18  in other states or across the globe—a failure alone enough to reject Plaintiffs' "exorbitant" theory of

19  general jurisdiction.  *Daimler*, 571 U.S. at 139; *see Owens v. Nat. Emphasis Ltd.*, 2022 WL 596837,

20  at *1 (9th Cir. Feb. 28, 2022) (Mem.) (affirming dismissal where plaintiff "failed to allege facts suffi-

21  cient to establish that [defendant] had such continuous and systematic contacts with California to es-

22  tablish general personal jurisdiction").

23         Unable to rely on general jurisdiction, Plaintiffs must resort to a theory of specific jurisdiction

24  to have their claims adjudicated in California—a theory that requires Plaintiffs to demonstrate a nex-

25  us between their specific claims and Kimberly-Clark's California contacts.  *See Ratha v. Phatthana*

26  *Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022) (describing the specific jurisdiction inquiry).  But

27  for eight of the ten Plaintiffs, their claims have nothing to do with California.  At the time of pur-

28  chase, these Plaintiffs did not live here, did not buy the product here, did not use it here, and therefore

were not "injured" here.  Am. Compl. ¶ 1.  "Hence," under the Ninth Circuit's "but for" jurisdictional test, "Plaintiffs [cannot] show they would not have suffered an injury 'but for' [Kimberly-Clark's] forum related conduct."  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001); *see also Genomics v. Song*, 2022 WL 2204361, at *6 (N.D. Cal. Mar. 25, 2022) (dismissing complaint where plaintiff's injury was not caused by conduct occurring in the forum).  According to their own theories of the case, each nonresident Plaintiff would have purchased and been "injured" by the product irrespective of Kimberly-Clark's modest California operations, which are not alleged to have anything to do with the wipes.  At any rate, "but for" test aside, when a plaintiff does not reside in the forum state or sustain injuries there, a defendant's contacts with that state—even if they are purposeful, extensive, and involve the same type of product as the one that caused the injury—cannot create specific jurisdiction on their own.  *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1778, 1781 (2017) (rejecting jurisdiction despite Bristol-Myers selling almost 187 million pills in California like the ones plaintiffs ingested, generating over $900 million in revenue; that it employed over 400 people in California; that five of its facilities were located here; and that it maintained a government-advocacy office in Sacramento); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1022, 1027–31 (2021); *In re Samsung Galaxy Smartphone Litig.*, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018).

Because eight of the Plaintiffs[4] provide no basis for personal jurisdiction over Kimberly-Clark in this Court, their claims must be dismissed under Rule 12(b)(2).

### B.    No Reasonable Consumer Would Interpret The Label As Plaintiffs Do.

In addition to these jurisdictional defects, the Amended Complaint is doomed on the merits. The consumer protection laws of the states in which Plaintiffs reside all demand that Plaintiffs show that Kimberly-Clark's statements on the product label are either false or misleading to a reasonable consumer.  *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 881-82 (9th Cir. 2021) (articulating reasona-

---

[4] The eight nonresident Plaintiffs whose claims must be dismissed for lack of personal jurisdiction are Natasha Garamani (Colorado), Trinity Guevremont (Colorado), Preston Lechins (Florida), William Rutter (Pennsylvania), James Smith (Pennsylvania), Jeanine Eckert (New Jersey), Patricia Perez (New York), and Cindy Rutter (Wyoming).  In addition, the Washington state law claims of Plaintiff Chouraki-Lewin (California and Washington) must be dismissed for the same reasons.

ble consumer standard under California and New York law); *see also*, *e.g.*, *Piescik v. CVS Pharm., Inc.*, 576 F. Supp. 3d 1125, 1132 (S.D. Fla. 2021) (same, for Florida law); *Pierre v. Healthy Beverage, LLC*, 2022 WL 596097, at *10 (E.D. Pa. Feb. 28, 2022) (same, for Pennsylvania law); *Eberhart v. LG Elecs. USA, Inc.*, 2015 WL 9581752, at *4 (D.N.J. Dec. 30, 2015) (same, for New Jersey law); *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1303–05 (10th Cir. 2022) (same, under Colorado law); *Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. Ct. App. 2012) (same, under Washington law); *Big-O Tires v. Santini*, 838 P.2d 1169, 1177 (Wyo. 1992) (Wyoming law requires "reasonable reliance on a "false representation of material fact").

The "reasonable consumer" standard "is not a negligible burden," and Plaintiffs "must demonstrate 'more than a mere possibility that [the seller's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Moore*, 4 F.4th at 882 (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)); *accord Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018); *see also*, *e.g.*, *Piescik*, 576 F. Supp. 3d at 1132 (explaining that, under FDUTPA, the reasonable consumer "standard requires a showing of probable, not possible, deception" (internal quotation marks omitted)).

Here, the Amended Complaint does not allege that any statements on the wipes are false. The product asserts that it wipes away 99% of germs from skin without the use of harsh chemicals, and Plaintiffs do not deny that this is true.[5]  Nor can Plaintiffs allege that a reasonable consumer would be misled into believing that the "germ removal" product kills germs on contact.  Because no reasonable consumer could look at the label and come to the conclusions Plaintiffs allegedly reached, the core theory of Plaintiffs' complaint fails, requiring dismissal of all causes of action.

### 1.   The Product Never States That It "Kills" Germs, And Makes Clear That It Removes Germs By Wiping Them Away.

Plaintiffs assume that reasonable consumers would miss the distinction between a product that "removes" or "wipes away" germs and a product that "kills" them.  Am. Compl. ¶ 11.  But the

---

[5] Nor could Plaintiffs argue there is insufficient scientific substantiation for the 99% figure, as the courts have "precluded private citizens from bringing actions that allege that the challenged advertising language lacked proper scientific substantiation." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir. 2017); *see, e.g., Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 455–56 (E.D.N.Y. 2013); *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, 2012 WL 2916827, at *6 (D.N.J. 2012).

Gibson, Dunn &
Crutcher LLP

Amended Complaint itself acknowledges that many cleaning products, like soaps and other surfac-tants, remove germs without killing them.  *Id.* ¶¶ 15–16.  The CDC likewise distinguishes between "removing" and "killing" germs when describing hand hygiene in its public-facing Q&A pages.[6]  Here, the front label of the "germ removal" product states that the product "wipes away 99% of germs from skin" and reinforces this message with a banner in all caps that says "WIPES AWAY."  There are no statements about killing germs, and the product explains it ***does not*** contain the kinds of chemicals that are commonly used to kill germs.

These statements are clear, unequivocal, true, and apparent on the product's front label.  But even assuming a reasonable consumer required more information to fully understand what the prod-uct does and does not do, they would need look no further than the other parts of the package.  *See* Ex. A (product images).  All of the state laws at issue assume that reasonable consumers not only "take into account all the information available to [them]," including information available elsewhere on a product's packaging, but also "the context in which that information is provided."  *Moore*, 4 F.4th at 882 (quoting *Bell v. Publix Super Mkts. Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)); *see also Nelson v. MillerCoors LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (NY GBL §§ 349 and 350); *Piescik*, 576 F. Supp. 3d at 1132–33 ("[A] reasonable consumer would not be expected to ignore" information on a back label).  This includes "qualifiers in packaging, usually on the back of a label or in ingredient lists," which "'can ameliorate any tendency of the label to mislead.'"  *Moore*, 966 F.3d at 1017 (quoting *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167 (2018)); *see also Nelson*, 246 F. Supp. 3d at 674 ("[T]he presence of a disclaimer or similar clarifying language may defeat a claim of deception"); *Piescik*, 576 F. Supp. 3d at 1133–34 (explaining that "a reasonable consumer would not be expected to ignore" information on back label).  Here, numerous statements on the product's label dispel any notion that "removes" and "wipes away" mean "kills."

---

[6]  Ctr. for Disease Ctrl. & Prevention, *Frequent Questions About Hand Hygiene*, https://www.cdc.gov/handwashing/faqs.html#:~:text=Washing%20hands%20with%20soap%20and,types%20of%20germs%20and%20chemicals (last reviewed Nov. 29, 2022) ("Alcohol-based hand sanitizers work by **killing** germs on your hands, while washing your hands with soap and water **re-moves** germs from your hands." (emphases added)); *see also id.* ("Handwashing will **remove** all types of germs from your hands, but hand sanitizers are not able to **kill** all types of germs[]." (empha-ses added)); *id.* ("Soap and water **remove** certain germs that hand sanitizers don't **kill**[.]" (emphases added)).

Gibson, Dunn &
Crutcher LLP

- **"No harsh chemicals"**:  These words appear on the product's front label, directly below the assertion that the product "safely wipes away 99% of germs."  This statement communicates that the product does not contain "harsh chemicals" of the kind found in germicides.  No reasonable consumer would infer that "no harsh chemicals" means that the product contains other, gentler types of germicides.  And Plaintiffs never identify what a gentler germicide is, if it exists.

- **"Paraben free" and "alcohol free"**:  The back label explicitly states that it does not contain alcohol or parabens, both of which are commonly used as germicidal agents in consumer products.  Am. Compl. ¶ 18.  From this partial ingredient list alone, consumers can easily perceive, as Plaintiffs concede, that "[t]here are no germicidal ingredients such as alcohol in the 'germ removal' product."  *Id.* ¶ 10.

- **"The Cleansing Power of Water . . . Anytime"**:  According to Plaintiffs, this statement, which appears on the product's back label, "explain[s] . . . that what makes the product 'work' is not even soap but rather water itself."  Am. Compl. ¶ 17.  Plaintiffs do not explain how a reasonable consumer reading *this* label would be misled about what the product does and does not do.

- **Ingredients list**:  As Plaintiffs freely admit, "[t]here are no germicidal ingredients such as alcohol in the 'germ removal' product."  Am. Compl. ¶ 10.  This is evident from the ingredients list on the back label, which allows a consumer to read and understand that "[t]he only operative ingredients in the product are mild surfactants, i.e., soaps, or cleansers."  *Id.*; *see also* Ex. A.

Any one of these statements refutes Plaintiffs' tortured reading of the product label.  Together, they conclusively show that no reasonable consumer would be misled into believing that the product could "kill" germs.

Plaintiffs' theory is far more attenuated than the one recently dismissed in *Kennard v. Kellogg Sales Co.*, 2022 WL 4241659 (N.D. Cal. Sept. 14, 2022).  There, the plaintiffs complained that their veggie burgers were made primarily of ingredients like oil and corn syrup, not vegetables.  *Id.* at *1.  The court held that reasonable consumers understand that a "veggie" burger refers to the fact that it is

a vegetarian (i.e., non-meat) product. *Id.* at \*3. Reasonable consumers do not buy a veggie burger expecting that the patty is made out of broccoli. *See id.* The court further held that any doubts on what made the patty a "veggie" burger could be "easily dispelled by reviewing the ingredient list on the packaging." *Id.* at \*5.

As in *Kennard*, reasonable consumers who buy a "germ removal" wipe with a label saying it "wipes away" germs from the skin using "no harsh chemicals" do not believe they are buying a product that kills germs dead. The lack of any germicides in the ingredients list, and the label's assertions that the product is "free" of alcohol, parabens, and harsh chemicals "easily dispel[]" any misconceptions that the product is germicidal. *See also Puri v. Costco Wholesale Corp.*, 2021 WL 6000078, at \*6 (N.D. Cal. Dec. 20, 2021) (dismissing claims about chocolate-flavored ice cream bars because the ingredients list disclosed that the chocolate flavoring came mostly from oils and not cocoa powder). In short, Plaintiffs do not "allege, plausibly, why the ingredient label [and other labeling statements] fail[] to provide reasonable consumers with enough context clues to clarify any unlikely" misunderstanding of the challenged statements. *See Martinez v. Mead Johnson & Co.*, 2022 WL 15053334, at \*6 (C.D. Cal. Oct. 22, 2022) (dismissing California consumer protection claims).

### 2. Comparisons To Other Products Refute Plaintiffs' Reading Of The Label.

Faced with these clear labeling statements, Plaintiffs resort to arguing that statements ***on other products, made by other companies*** make the statements on Kleenex wipes misleading. This expansive theory of advertising liability is both illogical and legally unsupportable.

First, Plaintiffs argue that because other manufacturers use "kills 99.99% of germs" in their advertising, Kimberly-Clark's use of "wipes away 99% of germs" is deceptive. Under this theory, when a consumer sees "99%" on Kimberly-Clark's package, they read nothing else and conclude that this must be a product that kills 99.99% of germs. Notably, none of the Plaintiffs alleges they leapt to this conclusion.[7] Nor could they sensibly do so. Reasonable consumers do not assume that all products function in the same way merely because they share similar advertising statements—or, in this

---

[7]   In fact, Plaintiffs do not allege that they were aware of, let alone viewed, any of the other products listed in their Amended Complaint.

Gibson, Dunn &
Crutcher LLP

case, similar numbers on the package.  Rather, they assess the product as a whole.  *See supra* at 9 (collecting cases).  And here, that would mean reading "99%" in the context of the full sentence where it appears—"safely wipes away 99% of germs from skin"—and in conjunction with the other statements on the label, including the ingredients list.  Even worse for Plaintiffs' theory, the compari-son products touted by the Amended Complaint explicitly state that they "kill" germs, "disinfect," are "antibacterial," and use germicidal ingredients like alcohol.[8]  Plaintiffs allege no facts supporting their far-fetched theory that mere use of the number "99%" automatically triggers the "inferential lea[p]" that the "germ removal" product kills germs just because these other products do.  *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1139 (2020).  And that theory cannot be the law, because if it were, "almost any advertisement [truthfully] extolling a product's [99% effective-ness] would be fodder for litigation."  *Id.* (internal quotation marks omitted; first alteration in origi-nal).

Plaintiffs' corollary attempt to claim that Kimberly-Clark chose where its product was placed on the shelves of retailers, and intentionally situated the product next to disinfectants, is equally un-supported.  Am. Compl. ¶ 21.  Plaintiffs allege no facts demonstrating that Kimberly-Clark, rather than third-party retailers, decided where to place the product on shelves.  And the mere placement of products cannot be used to justify a claim of deception, especially when a plaintiff does not plausibly "allege that defendant controls third parties that stock grocery stores and other locations." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020); *see also Parent v. Millercoors LLC*, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) (dismissing as implausible a claim that the defendant controlled product placement in third-party stores).

Second, Plaintiffs assert that Kimberly-Clark "represents" that the "'germ removal' product performs better than" other of its wet wipe products because "the blue and green products"—which are not the subject of any claims in Plaintiffs' Amended Complaint—"do not purport to have 'germ removal' characteristics." Am. Compl. ¶ 16.  In other words, Plaintiffs claim that the "germ remov-

---

[8]   Even if it were proper to consider statements on other products, the "germ removal" product more closely resembles the products that similarly claim to "wipe away germs," none of which are germi-cidal products. *See, e.g.*, Pampers Fresh Scented Baby Wipes, Target, https://tinyurl.com/26ppey3w (last visited Nov. 29, 2022).

Gibson, Dunn &
Crutcher LLP

al" product label is misleading because two of Kimberly Clark's other wipe products, which Plaintiffs do not allege they saw or considered before buying the wipes at issue, lack "germ removal" language. But statements on separate products that Plaintiffs do not allege ever seeing or purchasing cannot support liability for the labeling on the "germ removal" product they did allegedly purchase.  Nor is Plaintiffs' effort to attack the orange background of the product (compared to the "blue" or "green" color theming on the other wipes) any more availing.  Aside from asserting that the color orange is somehow associated with "hospital[s]" or "disinfectant[s]," *id.* ¶ 12, Plaintiffs do not even attempt to explain how the mere use of orange coloring on the "germ removal" product could possibly imply superiority to Kimberly-Clark's other wipes, much less convey to consumers that the "germ removal" product is "as effective as alcohol and more effective than soap." *id.* ¶ 28(c); *see also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1306 (2011) (finding that no reasonable consumer would think a green waterdrop icon signified the product's "environmental superiority"); *accord Shaeffer*, 44 Cal. App. 5th at 1139.

*     *     *

The label on the wet wipes could not be any clearer.  The product is a "germ removal" wipe, which "safely wipes away 99% of germs from skin" using "no harsh chemicals."  No reasonable consumer would pick up a package of the wipes, read the label, and come to the conclusion that they were holding something that was going to kill germs on contact.  Plaintiffs plead no facts supporting the assumption that consumers would conflate "removing" germs with "killing" them, particularly in a hypervigilant, pandemic and post-pandemic environment.  *See Piescik*, 576 F. Supp. 3d at 1133 ("[H]aving lived through almost two years of a global pandemic, a reasonable consumer would be expected to know what hand sanitizer does and does not do." (alteration and internal quotation marks omitted)).  Because the driving theory behind all of Plaintiffs' claims fails, the entire Complaint should be dismissed.

### C.     Plaintiffs Have Not Pled The Elements Of Their State Law Claims With The Particularity Required By Rule 9(b).

Plaintiffs also fail to adequately plead the most basic elements of their state consumer fraud claims—namely, injury, reliance, and materiality.  This is especially apparent when Plaintiffs' claims

are viewed under the heightened pleading standard demanded by Rule 9(b), which applies to claims, like Plaintiffs', that "sound in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (even "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct").  Claims for violations of the CLRA, FAL, and UCL are routinely subject to Rule 9(b) scrutiny, *Becerra*, 945 F.3d at 1228; *Kearns*, 567 F.3d at 1126–27, as are claims under the Colorado CPA, FDUTPA, NJCFA, and Washington CPA.[9] Indeed, irrespective of the state law at issue, "courts in the Ninth Circuit [are bound] to apply Rule 9(b) to any claim that is grounded in fraud," consistent with Ninth Circuit precedent. *Tabak v. Apple Inc.*, 2020 WL 9066153, at *8 (N.D. Cal. Jan. 30, 2020) (applying Rule 9(b) to claims under California UCL, FAL, and CLRA, NY GBL, and the FDUTPA); *see Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957 (C.D. Cal. 2012) (similar).  Because, in Plaintiffs' case, the "gravamen" of their Amended Complaint is that Kimberly-Clark used deceptive labeling practices to hide the alleged "truth" of the wipes' ingredients, *Hadley*, 243 F. Supp. 3d at 1098, all of Plaintiffs' claims are "based on allegations that the defendant engaged in fraudulent course of conduct" and must be asserted "with particularity." *Tabak*, 2020 WL 9066153, at *7–8 (internal quotation marks omitted).

Rule 9(b) requires Plaintiffs to plead "'the who, what, when, where, and how of the misconduct.'" *Id.* (quoting *Kearns*, 567 at 1124).  Yet, aside from a handful of generalized and collective allegations that were glommed on to the Amended Complaint in response to Kimberly-Clark's prior motion to dismiss, Plaintiffs do not adequately offer facts particularized to their experiences that would satisfy any of the elements of their state law claims.

### 1. Plaintiffs Have Not Adequately Pled Statutory Injury.

The consumer protection laws of Plaintiffs' home states all require that they adequately plead

---

[9] *See Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) ("To assert a claim under the CCPA, [plaintiff] must meet the heightened Rule 9(b) pleading standard."); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017) (collecting cases in which courts have applied Rule 9(b) to FDUTPA claims); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (applying Rule 9(b) to NJCFA claims); *Carter v. Ethicon Inc.*, 2021 WL 1893749, at *2 (W.D. Wash. May 11, 2021) (applying Rule 9(b) to Washington CPA claim).

a cognizable injury to sustain their statutory claims.[10]  In this case, Plaintiffs insist that they satisfy the injury requirement because "they received no value" for what they spent on the product; alternatively, "if the law requires" it, Plaintiffs purport to rely on a "price premium" theory of harm, alleging that the "germ removal" product was sold "at a premium over [allegedly comparable] products" and that they would not have bought it if they knew it would not "kill" germs.  Am. Compl. ¶¶ 13, 33; *see*, *e.g.*, *Babaian v. Dunkin' Brands Grp., Inc.*, 2018 WL 11445613, at *6 (C.D. Cal. June 12, 2018) (similar).  These threadbare assertions cannot carry Plaintiffs' pleading burden.

For starters, Plaintiffs cannot sustain *any* theory of economic harm when they got exactly what the product promised: a pre-moistened cloth that rids a person's skin of germs.  Indeed, Plaintiffs do not allege that the wipe failed to function in this way.  *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) (rejecting "economic injury theory" under UCL and CLRA because the product "actually performs as described"); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (dismissing the case for failure to allege statutory or Article III injury where the plaintiff did "not allege that the products function[ed] less well than advertised"); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003) (agreeing that, absent allegations "that a product failed to perform as advertised," "it must be assumed [the product] worked for plaintiffs and that consequently they got what they paid for").  For this reason alone, Plaintiffs cannot maintain that they were economically harmed—much less that they received *no* value for their money—when they got wipes that functioned as advertised by "removing" germs. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 289–90 (3d Cir. 2018) (finding no economic injury where a plaintiff received a benefit from the product and does not allege the benefit received is less than the one hoped for); *McGee v. S-L Snacks*

---

[10]  Because the Court must apply the consumer protection laws of the state where the product was purchased, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593–94 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), the consumer protection laws of the eight states in the Amended Complaint cannot be applied to "[a]ll U.S. consumers who have purchased the Kleenex 'germ removal' wet wipes product," or to California residents who purchased the products in other states, Am. Compl. ¶ 36.

1  *Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) (similar); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th

2  Cir. 2009) (similar).

3  At a minimum, Plaintiffs cannot argue that the product has zero market value.  No facts in the

4  Amended Complaint support Plaintiffs' far-fetched position that consumer demand for the wipes is so

5  nonexistent that the product is worth nothing on the objective market.  *Babaian*, 2018 WL 11445613,

6  at *6 (explaining that "a consumer's subjective willingness to pay is not a functional indicator of the

7  objective market effects of the purported misrepresentation").  Certainly this is not a case where the

8  product has "no value" because it "cannot lawfully be sold."  *Debernardis v. IQ Formulations, LLC*,

9  942 F.3d 1076, 1085 (11th Cir. 2019) (assessing economic harm under FDUTPA).  Nor does the

10  product contain "toxic ingredients" or "an ingredient that consumers might consider disgusting,"

11  which would similarly suggest the product is objectively worthless.  *Jackson-Mau v. Walgreen Co.*,

12  2023 WL 366913, at *7 (E.D.N.Y. Jan. 24, 2023) (assessing economic harm under NY GBL).  To the

13  contrary, even Plaintiffs agree, under their own warped theory of the case, that the "germ removal"

14  wipes offer at least as much cleansing benefit as "soap at sinks," Am. Compl. ¶ 13—and it does so at

15  the user's convenience, when "soap at sinks" is not readily available.  Plaintiffs' bald assertion that

16  these on-the-go cleansing wipes have no value at all defies plausibility and the governing caselaw.

17  As for Plaintiffs' "[a]lternative[]" price premium theory of harm, Am. Compl. ¶ 33, their alle-

18  gations fall short.  They allege nothing about the "premium price" they supposedly paid.  No Plaintiff

19  bothers to describe what portion of their purchase price was a premium—except to suggest, without

20  any support, that the cost of the "germ removal" product was "relatively high" compared to other

21  non-specified products.  *Id.*  Nor do Plaintiffs allege that this supposed price premium was caused by

22  the claimed deception, as opposed to other factors, such as different aspects of the product (e.g., con-

23  venience, quality, value of the Kleenex name brand), or the independent pricing decisions of third-

24  party retailers.  An unadorned allegation that Plaintiffs "would not have purchased a product but for a

25  deceptive act, standing alone," is simply not sufficient to allege a "price premium" theory of harm.

26  *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 69–70 (9th Cir. 2019).

27  Many courts have recognized that naked allegations of a price premium are deficient without

28  corresponding allegations of pricing information, especially when viewed under Rule 9(b).  A good

1    example is found in *Izquierdo v. Mondelez International, Inc.*, 2016 WL 6459832, at *1 (S.D.N.Y.

2    Oct. 26, 2016), where the plaintiffs alleged that they overpaid for sour candy at a movie theater that

3    was packaged in a half-empty box.  The court held plaintiffs had not adequately alleged injury be-

4    cause they did not identify the premium that they paid for the candy.  *Id.* at *7.  It did not matter that

5    the plaintiffs alleged that other types of candy were sold at lower prices per ounce than the sour can-

6    dy they purchased, because that "comparison t[old] the Court nothing about the value of the [c]andy,

7    or whether the cost of the [c]andy was inflated by [the defendant's] allegedly misleading packaging."

8    *Id.*  Similarly, the Ninth Circuit in *Naimi* held that, although the plaintiffs alleged they paid a price

9    premium for canned espresso, they "did not allege how much they paid for the beverage, how much

10   they would have paid for it absent the alleged deception, [or] whether [the defendant] (as opposed to

11   a third-party distributor) was responsible for any overpayment." 798 F. App'x at 70.  Judge Hamilton

12   of this court recently concluded the same, finding that the plaintiffs "fail[ed] to make out a concrete

13   injury" because their "allegations lack any detail about the prices they paid or the differences between

14   [the products at issue] and non-premium products."  *Horti v. Nestlé HealthCare Nutrition, Inc.*, 2022

15   WL 2441560, at *8 (N.D. Cal. July 5, 2022).

16        Other decisions have likewise granted motions to dismiss when the plaintiffs failed to allege

17   facts supporting their price premium theory.  *See Harris v. McDonald's Corp.*, 2021 WL 2172833, at

18   *2 (N.D. Cal. Mar. 24, 2021) (UCL, FAL, and CLRA); *Babaian*, 2018 WL 11445613, at *6–7

19   (same); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (NY GBL §§

20   349 and 350); *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *7–8 (S.D.N.Y. Jan. 23, 2018)

21   (same); *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018)

22   (same); *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 438–39 (D.N.J. 2015) (dis-

23   missing NJCFA and FDUTPA claims because plaintiffs failed to specifically allege "the difference in

24   value between the product promised and the one received" where they had not even "specif[ied] the

25   price paid for the product and the price of comparable products."); *Allen v. Wells Fargo, N.A.*, 2015

26   WL 5137953, at *9 (E.D. Pa. Aug. 27, 2015) (dismissing UTPCPL claims for "fail[ure] to specify the

27   alleged damages stemming from the negative credit report beyond merely stating that it was negative-

28   ly affected").  So too here, Plaintiffs' failure to allege a viable theory of economic injury requires

dismissal of all their claims.

### 2.    Plaintiffs Have Not Adequately Pled Causation Or Actual Reliance.

The Rule 9(b) standard does not permit Plaintiffs to satisfy the causation element of their respective state laws by merely alleging—as they do here—that they "relied" on certain labeling statements.  *See* Am. Compl. ¶ 25–28.

In most of the relevant states—California (Plaintiffs Rosenwald and Chouraki-Lewin), Colorado (Plaintiffs Garamani and Guevremont), New York (Plaintiff Perez), Pennsylvania (Plaintiffs Smith and William Rutter), Washington (Plaintiff Chouraki-Lewin), and Wyoming (Plaintiff Cindy Rutter)—satisfying the causation element requires proof of "actual reliance."[11]  A plaintiff in these states must plead that he relied on, and his injuries were therefore caused by, the allegedly misleading label.  *See In re Tobacco II Cases*, 207 P.3d at 39 (defining "actual reliance" as requiring a "show[ing] that the misrepresentation was an immediate cause of the injury-producing conduct").  In the remaining two states—Florida (Plaintiff Leschins) and New Jersey (Plaintiff Eckert)—a plaintiff must show a "causal nexus" between the deceptive act and the claimed injury.  *Arcand v. Bro. Int'l Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009) ("To state a cause of action under the NJCFA," plaintiff must allege "a causal nexus between . . . defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss." (alteration and internal quotation marks omitted)); *Alvarez v. Bank of Am.*

---

[11]   *See Sud v. Costco Wholesale Corp.*, 731 F. App'x 719, 721 (9th Cir. 2018) ("Under the relevant California consumer protection statutes, . . . the plaintiffs can recover on an affirmative misrepresentation theory only if they relied on the defendant's representations.") (citing *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) (UCL); *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201 (2012) (CLRA); *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 & n.9 (Cal. 2011) (UCL and FAL)); *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 973–74 (Colo. 1993) (en banc) (explaining that the CCPA protects only the "person who has been exposed to [the defendant's] violations and either purchases merchandise subject to the misleading information or undertakes other activities in reliance on the advertisement"); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 n.7 (S.D.N.Y. 2020) ("Section 350 [of the NY GBL] requires a plaintiff to plead that they relied on a defendant's statements at the time of purchase"; although "[Section] 349 does not require reliance," it does "require that a plaintiff plead causation, and thus the pleading requirements end up being much the same" (citation omitted); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) ("The [UTPCPL] clearly requires, in a private action, that a plaintiff . . . must allege reliance."); *Robinson v. Avis Rent A Car Sys., Inc.*, 22 P.3d 818, 823 (Wash. Ct. App. 2001) ("A plaintiff establishes causation [under the Washington CPA] if he or she shows the trier of fact that he or she relied upon a misrepresentation of fact." (internal quotation marks and brackets omitted)); *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 669 (N.D. Cal. 2019) ("The Wyoming Consumer Protection Act . . . explicitly requires reliance." (citing Wyo. Stat. § 40-12-108(a)).

Gibson, Dunn &
Crutcher LLP

1    *Corp.*, 2014 WL 3767669, at \*2–3 (S.D. Fla. July 31, 2014) ("[T]o prevail under a claim for a tradi-

2    tional FDUTPA violation," plaintiff must allege "facts supporting a causal connection between De-

3    fendant's conduct and Plaintiff's damages").

4            Whichever formulation of the causation element is used, Plaintiffs fail to meet it.  In response

5    to Kimberly-Clark's prior motion to dismiss raising this point, the Amended Complaint added a few

6    paragraphs of generalized allegations that an unspecified collective group of "Plaintiffs" read and re-

7    lied on representations on the front label.  Am Compl. ¶ 25–28.  But nowhere does the Amended

8    Complaint connect those allegations to any named Plaintiff.  There are no allegations that any partic-

9    ular Plaintiff specifically read the label, or that their individual purchasing decisions were driven by a

10   particular labeling statement.  If nothing about the challenged assertions "induced or persuaded the

11   plaintiff[s] to purchase the defendant's product"—as opposed to some other factor, like price, availa-

12   bility, word of mouth endorsement, brand loyalty to Kleenex, or another paramount consumer con-

13   sideration—the causation requirement is not satisfied.  *Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 574

14   (2003) (applying NJCFA); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050,

15   1089 (C.D. Cal. 2015) ("[W]here a plaintiff has not seen or heard an allegedly deceptive advertise-

16   ment, she cannot challenge it under the FDUTPA."); *cf. Solo v. Bed Bath & Beyond, Inc.*, 2007 WL

17   1237825, at \*4 (D.N.J. Apr. 26, 2007) (dismissing complaint under NJCFA where plaintiff failed to

18   explain how his loss was attributable to the label's "representation that the sheets were '1000 thread

19   count[]'").

20           Plaintiffs' failure to specifically allege that any of them read and believed the allegedly mis-

21   leading statements on the label at the time of purchase is a basic pleading defect that dooms the effort

22   to state a claim based on any consumer fraud statute.  *Roffman v. Perfect Bar, LLC*, 2022 WL

23   4021714, at \*6 (N.D. Cal. Sept. 2, 2022) (finding no actual reliance where the complaint did "not al-

24   lege that Plaintiffs looked at or relied on the nutrition facts panel"); *Brown v. Van's Int'l Foods, Inc.*,

25   2022 WL 1471454, at \*10 (N.D. Cal. May 10, 2022) ("[Plaintiff] has not pleaded any facts that

26   would show that she looked at the [] label during the process of purchasing the Products."); *In re*

27   *Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 833 (S.D. Ohio 2012) ("Without alleging that he

28   heard or had access to [defendant's] statements, or identifying the specific statements on which he

1   allegedly relied, Colorado Plaintiff cannot demonstrate proximate cause under the CCPA.”); *Robin-*

2   *son*, 22 P.3d at 827 (Washington CPA claim not viable where “[t]here is no evidence that the con-

3   sumers saw the [representations]”).  Under the stringent requirements of Rule 9(b), all of Plaintiffs’

4   state law claims must be dismissed for failure to plead causation.

5              **3.      Plaintiffs Have Not Adequately Pled Materiality.**

6          The consumer laws of Plaintiffs’ home states also demand that the supposed deceptive state-

7   ment was objectively “material.”  *See, e.g.*, *In re NJOY*, 120 F. Supp. 3d at 1103 (explaining that the

8   CLRA, UCL, and FDUTPA require proof “that the deceptive practice is sufficiently material to de-

9   ceive an objective reasonable consumer”); *Luci v. Overton, Russell, Doerr & Donovan, LLC*, 789 F.

10  App’x 895, 898 (2d Cir. 2019) (affirming dismissal of NY GBL claim where “inaccuracies” were

11  “not material”); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 228 (3d Cir. 2008) (affirming dis-

12  missal of UTPCPL claim when plaintiff did not explain how alleged misrepresentations were materi-

13  al).  But Plaintiffs’ own theory of the case belies their conclusory allegation that Kimberly-Clark’s

14  labeling statements were in fact material.  Am. Compl. ¶ 31.  Indeed, Plaintiffs themselves assert that

15  the distinction between “removes” or “wipes away,” on the one hand, and “kills,” on the other, does

16  not matter to reasonable consumers:  “[T]he point is that the germs are *gone* and therefore not able to

17  harm.”  *Id.* ¶ 11.  From this premise, Plaintiffs appear to agree that, so long as a product removes

18  germs from a person’s skin, the reasonable consumer is satisfied.  Yet the Amended Complaint does

19  not challenge the accuracy of Kimberly-Clark’s statement that the “germ removal” product “wipes

20  away 99% of germs from skin.”  Nor do Plaintiffs contend that the product is ineffective at removing

21  germs to the degree claimed on the label.  Rather, the only grievance that Plaintiffs raise is that they

22  expected the product to “kill” germs, or to get rid of germs in a similar (or similarly potent) fashion,

23  even though Plaintiffs admit that, however a product cleanses the skin, “the point is that the germs are

24  *gone*.”  *Id.*   Under either Rule 8 or Rule 9(b), Plaintiffs do not and cannot explain how these incon-

25  sistent allegations suffice to show that Kimberly-Clark’s purported deception was “material” to a rea-

26  sonable consumer.

27          **D.      Plaintiffs Garamani, Guevremont, And Cindy Rutter Additionally Cannot Satis-
                   fy Other Elements Of Their State Consumer Fraud Laws.**

28      For all the reasons just given, the Amended Complaint must be dismissed in full because none

of the Plaintiffs has pled the elements of their state consumer fraud claims with the particularly required by Rule 9(b).  On top of that, Plaintiffs Garamani and Guevremont (Colorado) and Plaintiff Cindy Rutter (Wyoming) overlook additional limitations to suit in their states' statutes.  These reasons provide separate bases for dismissal.

### 1.     The CCPA Does Not Authorize Damages In This Putative Class Action.

Plaintiffs Garamani and Guevremont cannot plead a class claim under the Colorado Consumer Protection Act (CCPA) because the statute is clear on its face that money damages are not available in a purported "class action."  *See* Colo. Rev. Stat. § 6-1-113(2) ("*Except in a class action* . . . any person who, in a private civil action, is found to have engaged in . . . any deceptive trade practice . . . shall be liable [for monetary damages]." (emphasis added)); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 799 (E.D. Mich. 2019) ("The plain language of the CCPA bars monetary damages in class actions."); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4036319, at *3 (D. Colo. July 1, 2015) (statute "preclude[s] monetary damages and treble damages in class actions").  Ignoring this "plain language," *Matanky*, 370 F. Supp. at 799, Plaintiffs allege that they (and the putative class) are entitled to recover actual damages, as well as "consequential, incidental and special damages," in an amount to be determined at trial.  Am. Compl. ¶ 95(c).  But "the CCPA creates no statutory liability for a defendant in a private class action."  *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1219 (D. Colo. 2012).  Because Plaintiffs are not entitled to seek, let alone recover, any damages under the CCPA, and because injunctive relief is likewise unavailable, *see infra* at 22–23, the claims of Plaintiffs Garamani and Guevremont must be dismissed.  *See Martinez*, 886 F. Supp. 2d at 1219 (concluding that "all of the [damages] remedies [listed in the CCPA], including actual damages, are not available to classes"); *Matanky*, 370 F. Supp. 3d at 799 (same and dismissing CCPA claims on pleadings); *Murphy v. Toyota Motor Sales USA Inc.*, 2020 WL 10354129, at *6–7 (C.D. Cal. Nov. 24, 2020) (same); *Murtagh v. Bed Bath & Beyond Inc.*, 2020 WL 4195126, at *6 (D. Colo. July 3, 2020) (same), *report and recommendation adopted*, 2020 WL 4193553 (July 21, 2020).

### 2.     Plaintiff Cindy Rutter Failed To Satisfy The Wyoming CPA's Notice Requirement.

Plaintiff Cindy Rutter cannot bring her claims under the Wyoming Consumer Protection Act

Gibson, Dunn &
Crutcher LLP

1   (Wyoming CPA) because she has not complied with the notice requirement imposed by that statute.

2   *See* Wyo. Stat. Ann. § 40-12-109; *Broderick v. Dairyland Ins. Co.*, 270 P.3d 684, 692 (Wyo. 2012)

3   (requiring consumer prior to suit to have "'given notice to the alleged violator pursuant to W.S. § 40-

4   12-109'").   Ms. Rutter does not claim that she ever gave notice to Kimberly-Clark of her dissatisfac-

5   tion with the "germ removal" product, or provided Kimberly-Clark with a chance to cure the alleged-

6   ly deceptive product label.  Because the clear terms of the Wyoming CPA bar the filing of any action

7   until proper notice is given, Ms. Rutter's state law claims must be dismissed.

8           **E.      Plaintiffs Have No Standing To Seek Injunctive Or Declaratory Relief.**

9           Finally, "[a] plaintiff must demonstrate constitutional standing separately for each form of re-

10   lief requested."  *Davidson*, 889 F.3d at 967.  No Plaintiff here has standing to pursue injunctive or

11   declaratory relief in a lawsuit against Kimberly-Clark because the allegedly offending product is not

12   being made anymore.  "For injunctive relief, . . . the threat of injury must be 'actual and imminent,

13   not conjectural or hypothetical.'"  *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493

14   (2009)); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105, 111 (1983).  The Amended Com-

15   plaint concedes that Kimberly-Clark has not made the "germ removal" product for more than a year,

16   *see* Am. Compl. ¶ 35—rendering the threat of future harm speculatively impossible.

17          For the same reason, the prospective-only declaration of rights that Plaintiffs seek under the

18   Declaratory Judgments Act is also unavailable.  Absent allegations of continuing conduct or immi-

19   nent injury, Plaintiffs cannot justify the pursuit of such an equitable judicial remedy.  *See Sample v.*

20   *Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (explaining that "plaintiffs must demonstrate that a

21   'credible threat' exists that they will again be subject to the specific injury for which they seek . . .

22   declaratory relief"); *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1103 (9th Cir.

23   2016) (similar); *see also Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ("Because there is no on-

24   going injury to [the plaintiff] and any threat of future injury is neither imminent or likely, . . . a de-

25   claratory judgment would . . . be inappropriate."); *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F.

26   App'x 849, 855 (11th Cir. 2013) (similar).

27          In addition, the injunctive relief claims would fail even if the Kleenex Germ Removal Wipes

28   were still being manufactured.  Plaintiffs do not explain why the monetary relief they seek is insuffi-

cient to redress their supposed harms, which are purely economic in nature.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *4 (C.D. Cal. Dec. 14, 2017) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (internal quotation marks omitted)).  For these reasons, Plaintiffs' claims for prospective relief must be dismissed under Rule 12(b)(1).

## VI.    CONCLUSION

For the foregoing reasons, Kimberly-Clark respectfully requests that the Court grant Kimberly-Clark's motion to dismiss, with prejudice.

Dated: February 22, 2023

GIBSON, DUNN & CRUTCHER LLP

By:  *Timothy W. Loose*

Timothy W.  Loose
Derek K. Kraft
M.J. Kirsch

*Attorneys for Kimberly-Clark Corporation*