1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

JUDAH ROSENWALD, CRAIG
CHOURAKI-LEWIN, CINDY RUTTER,
WILLIAM RUTTER, TRINITY
GUEVREMONT, NATASHA
GARAMANI, JAMES SMITH, PATRICIA
PEREZ, JEANINE ECKERT, and
PRESTON LESCHINS, on behalf of
themselves and all others similarly situated,

12
13
14
15

Plaintiffs,

16
17

v.

18

KIMBERLY CLARK CORPORATION,

Defendant.

Case No. 3:22-cv-04993-LB

**ORDER DISMISSING AMENDED
COMPLAINT**

Re: ECF No. 25

19
20

**INTRODUCTION**

21

In this putative class action, the plaintiffs, who are from different states (California, Wyoming,

22

Washington, Colorado, Florida, Pennsylvania, and New Jersey) claim that the defendant's

23

marketing of Kleenex Wet Wipes Germ Removal falsely suggests that the product is a germicide, in

24

violation of their states' consumer-protection laws. The front label claims that the product "wipes

25

away 99% of germs from skin" and has "no harsh chemicals." The back label lists the product's

26

ingredients (without any germicides) and has representations such as "alcohol free" and "no harsh

27

chemicals." The defendant moved to dismiss, arguing mainly that (1) under Federal Rule of Civil

28

Procedure 12(b)(2), the court lacks personal jurisdiction over the non-California plaintiffs because

United States District Court
Northern District of California

1   the defendant's California contacts do not establish general jurisdiction and there is no specific

2   jurisdiction for claims arising from out-of-state purchases, and (2) under Rules 9(b) and 12(b)(6),

3   the labels are not deceptive and the plaintiffs did not plead fraud with particularity. The court grants

4   the motion.

**STATEMENT**

6   **1.   Parties and Jurisdictional Allegations**

7       The eight plaintiffs bought the product in their states of residence between February 2020 and

8   January 2021. Only two plaintiffs reside in California: Judah Rosenwald and Craig Chouraki-

9   Lewin. The rest live in Wyoming, Washington, Colorado, Florida, Pennsylvania, and New Jersey.[1]

10      The defendant, Kimberly-Clark Corporation, is a global consumer-products company

11  incorporated in Delaware and headquartered in Dallas, Texas.[2] It has three California locations,

12  two in Ontario and one in Chino. From 1956 to at least 2020, it operated a manufacturing plant in

13  Fullerton, California, and its Careers webpage lists jobs that are available there currently. It is

14  advertising for jobs: an IT analyst and PMO program manager in Los Angeles and business-

15  analyst and customer-development-associate positions in Pleasanton. "Key executive personnel

16  operate out of California:" (1) Lynda Talamayan, Procurement Manager, in Fremont; (2) Kurt

17  Stitcher, General Counsel and VP of Compliance, in Irvine; (3) Aileen Zerrudo, Vice President of

18  Global Communications, in Oakland; and (4) Ellen Brown, Associate General Counsel, Customer

19  Development, who is located in the San Francisco Bay Area and whose latest post reads, "We are

20  hiring! Please share with any superstar paralegals who may be interested in supporting K-C's

21  fantastic US sales team."[3]

United States District Court
Northern District of California

---

[1] Am. Compl. – ECF No. 24 at 2–3 (¶ 1), 12–13 (¶ 32). Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Kimberly-Clark Quarterly Rep. (Form 10-Q) (June 30, 2023), https://www.sec.gov/ix?doc=/Archives/edgar/data/55785/000005578523000054/kmb-20230630.htm. The court judicially notices the undisputed facts on the SEC's website. Fed. R. Evid. 201(b); *Yee v. Select Portfolio, Inc.*, No. 18-CV-02704-LHK, 2018 WL 2938877, at *4 (N.D. Cal. June 12, 2018). The court can look to matters outside the complaint when assessing personal jurisdiction.

[3] Am. Compl. – ECF No. 24 at 3 (¶ 2) & n.2.

**2.  The Product**

The defendant sold the product nationally through retailers but discontinued it shortly after the plaintiffs sent their letter under California's Consumer Legal Remedies Act (CLRA).[4] This is the front label:[5]



The product name is "Kleenex Wet Wipes Germ Removal." The label represents that the product "safely wipes away 99% of germs from skin" and has "no harsh chemicals."

---

[4] *Id.* at 4 (¶ 4), 14 (¶ 35).

[5] Front Label, Ex. A to Mot. – ECF No. 25-1 at 2. The plaintiffs did not dispute that the labels were accurate or object to the court's consideration of them. They cannot plead around the undisputed labels, and thus the court considers them under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

United States District Court
Northern District of California

This is the back label:[6]





It refers to the cleansing power of water, anytime, anywhere. The product is soft on the skin, hypoallergenic, dermatologically tested, alcohol free, and paraben free. It is strong for hands and soft for face and body. Its "gentle ingredients" are water, glycerin, aloe, operative ingredients that are mild surfactants (soaps or cleansers, here, coco-betaine and polysorbate 20), and other non-germicidal ingredients.[7] The two pictures show using the wipes to clean hands and pots.

---

[6] Back Label, Ex. A to Mot. – ECF No. 25-1 at 2–3.

[7] Am. Compl. – ECF No. 24 at 6 (¶ 10).

United States District Court
Northern District of California

United States District Court
Northern District of California

The product is orange. The defendant had two other versions of the products: (1) a blue product labeled "gentle clean" and, more specifically, "a gentle clean for hands and face" with "no harsh chemicals;" and (2) a green product labeled "sensitive" and, more specifically, "fragrance free with aloe and E for hands and face" with "no harsh chemicals."[8] The labels for the three wipes products all represent that the products lack "harsh chemicals." The product differentiation thus is presented in terms of function: orange removes germs (99 percent of them), blue cleans, and green softens.[9]

The germ-removal product competed with other products "presented nearby in the given store" — some alcohol free — that advertise the effect of antibacterial hand wipes that kill 99.9 percent of germs: Wet Ones antibacterial hand wipes ("Kills 99.99% of Germs") and Clorox Disinfecting Wipes ("kills 99.9% of Viruses & Bacteria"), among others. The defendant's representations were designed to attract purchasers who would otherwise buy products that eliminated germs but instead opted to buy the defendant's "germ removal" product to accomplish the same thing safely, with no harsh chemicals.[10] The defendant's blue and green products compete with other soap-substitute products, but the orange product competed with alcohol products.[11]

Because there are no germicidal ingredients such as alcohol in the product, the marketing is allegedly a misrepresentation because a reasonable consumer does not distinguish between killing and removing (or wiping away) germs.[12] A reasonable consumer would believe a "99%" effective wipe contained something more effective than soap for several reasons: its reference to germs, its 99-percent language, and its orange color (representing a hospital or disinfectant). The orange

---

[8] *Id.* at 4–5 (¶ 5).

[9] *Id.* at 5 (¶ 6); *see also id.* at 8–9 (¶¶ 17–18) (the orange, blue, and green products share the same claims: the "cleansing power of water, anytime, anywhere," dermatologically tested, paraben free, and hypoallergenic; the orange package says "safe on skin," which might more reasonably be associated with the blue or green products; the orange and green products share the label "alcohol free," which the blue does not, even though it's alcohol free; all share the mild surfactant (the soap-like product discussed above with the back label)).

[10] *Id.* at 5 (¶ 7) (listing other products).

[11] *Id.* at 6 (¶ 8) (listing products).

[12] *Id.* (¶ 11).

differentiates the product from the blue and green products "that are clearly marketed as soap substitutes."[13] The defendant presented the product as containing alcohol-equivalent effectiveness by using "99%."[14] Consumers thought that they bought a product that eliminated germs just like an alcohol germicide, but instead they bought a wipe "damp with water and a bit of soap."[15]

The plaintiffs all bought the product thinking that it had capabilities that it did not.[16] The plaintiffs relied on the front-label representations of "germ removal," "wipes away," and "safely wipes away 99% of germs" "to mean that the product was" (1) "as effective in removing germs (i.e., eliminating the possibility that germs could infect them) as the products advertised as 'killing' micro-organisms;" (2) "as effective as similarly advertised alcohol products;" (3) "more effective than simply soap;" and (4) "effective against Covid and, specifically, that it was as effective as alcohol and more effective than soap (whether used at a sink or contained in a wipe)."[17] The plaintiffs also relied on the orange color to conclude points 2, 3, and 4.[18]

The plaintiffs relied on the Kleenex brand for the truthfulness and accuracy of the representations, and they selected the product based on these representations, not those on the back of the product. They did not read the fine print and would not be able to understand it.[19] The plaintiffs bought the product thinking that it was not just soap and water and instead was as effective as alcohol. If the representations had been accurate, they would not have bought the product.[20] But if the product were still available and its representations were accurate, they would buy other Kleenex and Kimberly-Clark products. They are interested in buying those products but do not know whether to trust the labels.[21]

---

[13] *Id.* at 6–7 (¶ 12).

[14] *Id.* at 9 (¶ 21).

[15] *Id.* at 10 (¶ 23).

[16] *Id.* (¶ 24).

[17] *Id.* at 10–11 (¶¶ 25–27).

[18] *Id.* at 11–12 (¶ 28).

[19] *Id.* at 12 (¶¶ 29–30).

[20] *Id.* (¶ 31).

[21] *Id.* at 14 (¶ 35).

United States District Court
Northern District of California

1

### 3.   The Classes, Claims, and Relevant Procedural History

2       The plaintiffs propose alternative classes: they propose a class of U.S. consumers who bought

3   the product, classes for purchasers in the plaintiffs' states of residence, classes for purchasers in

4   states with statutes similar to the CLRA, and lastly a class of California purchasers.[22] The

5   complaint has the standard California claims for the California class for violations of the CLRA,

6   California's False Advertising Law (FAL), and California's Unfair Competition Law (UCL).[23] It

7   has the equivalent claims for state classes for the states of residence of the other plaintiffs.[24] Claim

8   eleven is for declaratory relief for a nationwide class.[25] The plaintiffs seek an injunction,

9   restitution, damages, and fees.[26]

10       It is undisputed that the court has diversity jurisdiction under the Class Action Fairness Act,

11   28 U.S.C. § 1332(d)(2). All parties consented to magistrate-judge jurisdiction under 28 U.S.C.

12   § 636.[27] The court held a hearing on May 25, 2023.

13

14                                  **STANDARDS OF REVIEW**

15   ### 1.   Rule 12(b)(2) — Personal Jurisdiction

16       "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

17   bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059,

18   1068 (9th Cir. 2015) (cleaned up). The parties may submit, and the court may consider,

19   declarations and other evidence outside the pleadings in determining whether it has personal

20   jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds*

21   *by Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

22

23

24   [22] *Id.* at 14–15 (¶ 36).

25   [23] *Id.* at 15–18 (¶¶ 41–59).

26   [24] *Id.* at 19–23 (¶¶ 63–91).

     [25] *Id.* at 23 (¶¶ 92–94).

27   [26] *Id.* at 23–24 (¶ 95).

28   [27] Consents – ECF Nos. 8, 10.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (cleaned up). "[U]ncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (cleaned up). But courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not simply rest on the bare allegations of the complaint.") (cleaned up).

**2. Rule 12(b)(6) — Failure to State a Claim and Rule 9(b) — Pleading Fraud**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves . . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

1     Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that

2    allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3    alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability

4    requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

5    *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

6    short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

7        Fraud allegations elicit a more demanding standard. "In alleging fraud . . . , a party must state

8    with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other

9    conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that

10   "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the

11   misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The

12   plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." *Id.*

13   (cleaned up). Like the basic "notice pleading" demands of Rule 8, a driving concern behind Rule

14   9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x

15   571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give

16   defendants notice of the particular misconduct . . . so that they can defend against the charge and

17   not just deny that they have done anything wrong.") (cleaned up); *Odom v. Microsoft Corp.*, 486

18   F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare

19   an adequate answer").

20       If a court dismisses a complaint because of insufficient factual allegations, it should give leave

21   to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook,*

22   *Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court

23   dismisses a complaint because its legal theory is not cognizable, the court should not give leave to

24   amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see*

25   *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to

26   amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal

27   theory if given the opportunity").

28

United States District Court
Northern District of California

**ANALYSIS**

The plaintiffs claim that the defendant's marketing of germ-removal Wet Wipes falsely suggests that the product is a germicide. The defendant moved to dismiss, mainly on the grounds that there is no personal jurisdiction for products purchased outside of the state of California and the plaintiffs otherwise do not plausibly plead their claims, which sound in fraud, because the product label is not deceptive and instead conveys that the wipes do not use a germicide.[28] There is no general jurisdiction, and there is no specific personal jurisdiction for products that the non-California plaintiffs purchased in their states of residence. The plaintiffs do not plausibly plead claims in any case because the labels would not deceive a reasonable consumer.

**1. Personal Jurisdiction**

The court's "inquiry centers on whether exercising jurisdiction comports with due process," which requires that defendants have "certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 125–26 (2014) (cleaned up); *Franey v. Am. Battery Sols., Inc.*, No. 22-cv-03457-LB, 2022 WL 4280638, at *4–10 (N.D. Cal. Sept. 15, 2022) (fuller analysis of specific personal jurisdiction in a diversity case).

Personal jurisdiction is general or specific. *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). A court with general jurisdiction can hear any claim against the defendant, even if the incidents underlying the claim took place in a different state. *Id.*; *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). Specific jurisdiction exists when the suit arises out of or relates to the defendant's contacts with the forum. *Walden*, 571 U.S. at 284; *Bristol-Myers*, 582 U.S. at 262.

The out-of-state plaintiffs contend that the defendant's contacts with the forum establish general and specific personal jurisdiction. They do not.

First, there is no general jurisdiction over the defendant, a Delaware corporation headquartered in Texas.

---

[28] Mot. – ECF No. 25 at 12–13.

General jurisdiction exists when a non-resident defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (cleaned up); *Aldrich v. NCAA*, 484 F. Supp. 3d 779, 791 (N.D. Cal. 2020) (a defendant's ties to the forum must be "so strong and significant (as compared to its other non-forum connections) as to render its connection with the forum unique"). "If the goal of personal jurisdiction is to ensure that a defendant can foreseeably be 'hailed into a court' in a forum, that goal is most vulnerable when a defendant is subject to jurisdiction on grounds unconnected to the forum." *Aldrich*, 484 F. Supp. 3d at 790. "Perhaps for this reason, there is a long history of courts 'training on the relationship among the defendant, the forum, and the litigation,' *i.e.*, specific jurisdiction." *Id.* (cleaned up) (quoting *Daimler*, 571 U.S. at 132).

The jurisdictional facts (set forth in full in the Statement) are that Kimberly-Clark, a global consumer-products company headquartered in Dallas, Texas, has three California "locations" (two in Ontario, one in Chino) (without any further description of what they do). It had, and maybe still has, a manufacturing plant in Fullerton, California, and it has postings for jobs there and other jobs in California (a program manager, an IT analyst, and business-analyst and customer-development-associate positions). It has employees in California: a procurement manager, the general counsel and VP of compliance, a VP of global communications, and an associate general counsel for customer development.

The plaintiffs have not sustained their burden to establish general personal jurisdiction. The modest contacts are not "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (cleaned up). Also, if a state statute provides that a corporation registering to do business in the state consents to general personal jurisdiction in that state, then that corporation is subject to general personal jurisdiction. *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2037–38 (2023). This is not relevant to courts in California, because "California does not require corporations to consent to general personal jurisdiction in that state when they designate an agent for service of process or register to do business." *AM Tr. v. UBS AG*, 681 F. App'x 587, 588–89 (9th Cir. 2017).

Second, the out-of-state plaintiffs do not establish specific jurisdiction either because the claims

related to the out-of-state purchases do not arise from the defendant's forum contacts with California. *Bristol-Myers*, 582 U.S. at 262. The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). "The plaintiff has the burden of proving the first two prongs." *Picot*, 780 F.3d at 1211–12. "If he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1212 (cleaned up).

The non-California plaintiffs have not established prong one or two for their tort claims related to products that they bought in their states of residence. The defendant committed no intentional acts expressly aimed at the forum that caused harm here. *Axiom Foods*, 874 F.3d at 1069–70; *Calder v. Jones*, 465 U.S. 783, 788–90 (1984). The claims do not arise out of or relate to the defendant's contacts with the forum. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021). There is no "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 582 U.S. at 262. The court dismisses the non-California plaintiffs' claims for lack of personal jurisdiction.

### 2. Reasonable Consumer Test

Claims under the CLRA, FAL, and UCL are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived."

*Id.* (cleaned up). "The California Supreme Court has recognized that these laws prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* (cleaned up) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–33 (1998).

Generally, determining "whether a reasonable consumer would be deceived" is a question of fact. *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 16 (N.D. Cal. 2020); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). In rare situations, however, "a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Cheslow*, 445 F. Supp. 3d at 16 (cleaned up); *see, e.g.*, *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-cv-05921-WHO, 2018 WL 1569697, at *7 (N.D. Cal. Mar. 30, 2018) (dismissing claims based on use of term "diet" because studies cited in complaint did not show the product causes weight gain); *Becerra v. Coca-Cola Co.*, No. C 17-05916 WHA, 2018 WL 1070823, at *4 (N.D. Cal. Feb. 27, 2018) (same).

Here, the plaintiffs allege that the representations on the label are misleading because they suggest that the product is a germicide. But the front label does not say that the product kills germs: it says it wipes them away. The label does not say that the product is a germicide: it says that it has no harsh chemicals. The plaintiffs do not allege that the statements are false. There is no deception when a front label is accurate and not misleading. *Lokey v. CVS Pharmacy, Inc.*, No. 20-cv-04782-LB, 2021 WL 633808, at *4 (N.D. Cal. Feb. 18, 2021).

The plaintiffs do not address the other representations about the product's qualities: the cleansing power of water, soft on the skin, hypoallergenic, dermatologically tested, alcohol free, and paraben free, which are consistent with the front-label representations. The plaintiffs instead focus on the fine print of the ingredients list, which establishes that the product is not a germicide, and contend that they did not read the fine print. An accurate ingredient list in fine print may not save the day when a front label is deceptive and confusing. *See Bell v. Publix Super Mkts., Inc.*,

982 F.3d 468, 476 (7th Cir. 2020) ("[A]n accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers.").[29] But that does not apply here, where the front label and back labels convey accurate information and are consistent with each other. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ("[Q]ualifiers in packaging, usually on the back of a label or in ingredient lists, can ameliorate any tendency of the label to mislead. If, however, a back label ingredients list conflicts with, rather than confirms, a front label claim, the plaintiff's claim is not defeated.") (cleaned up). Somewhat similarly, another court in the district considered whether consumers would consider a "veggie" burger to be vegetarian (as opposed to composed of vegetables). The burger was made mostly of ingredients such as oil and syrup. The court held that reasonable consumers would understand the product to be vegetarian, and any doubts were dispelled by an accurate back-label list of ingredients. *Kennard v. Kellogg Sales Co.*, No. 21-cv-07211-WHO, 2022 WL 4241659, at *2, *4 (N.D. Cal. Sept. 14, 2022).

In sum, the front label is consistent with the back label. This is not a case where the labels are misleading or inconsistent. *Cf. Williams*, 552 F.3d at 936, 940 (front label advertised fruit-juice snacks coupled with pictures of real fruit, even though back label listed ingredients showing that the product was made from high-fructose corn syrup; a reasonable consumer could be misled); *Norman v. Gerber Prods.*, *Inc.*, 21-cv-09940-JSW, 2023 WL 122910, at *1 (N.D. Cal. Jan. 6, 2023) (misleading when the front label said "non-GMO" and ingredients list said that the product contained GMOs).

The plaintiffs also allege that the defendant "situates its products near alcohol products."[30] They characterize that as a reasonable inference because the defendant designed the label to mimic that of germicide products and the products are wipes.[31] Again, the product is not labeled deceptively. *Cheslow*, 445 F. Supp. 3d at 21–22 (rejecting the reasoning that a third party's

---

[29] Opp'n – ECF No. 29 at 15–16 (citing case).

[30] *Id.* at 13 n.7 (citing Am. Compl. – ECF No. 24 at 9 (¶ 21)) (cleaned up).

[31] *Id.*; Am. Compl. – ECF No. 24 at 9 (¶ 21).

arrangement of products in a store affects the reasonable-consumer analysis). It is an unremarkable point of retail marketing that similar products are sold in the same area and compete with each other. Companies brand products to meet different consumer preferences. *Lokey v. CVS Pharmacy, Inc.*, No. 20-cv-04782-LB, 2020 WL 6822890, at *5 (N.D. Cal. Nov. 20, 2020).

The plaintiffs also allege that the package's orange color suggests (deceptively) that it removes germs (as opposed to the blue product, which cleans, and the green product, which softens).[32] The complaint does not allege that the plaintiffs saw the other-colored products. In any event, the plaintiffs allege nothing more than marketing products to appeal to different audiences. *Id.*

The court grants the motion to dismiss the claims.

## CONCLUSION

The court dismisses the non-California plaintiffs' claims for lack of personal jurisdiction and the California plaintiffs' claims for failure to state a claim (an analysis that seemingly applies to the similar statutory schemes in the states where the non-California plaintiffs reside and bought the product). Given that this analysis is based on the labels, curing the deficiencies seems difficult. But the plaintiffs may file an amended complaint within twenty-eight days if they can cure the deficiencies and must attach a blackline comparison of their new complaint against the current complaint.

This disposes of ECF No. 25.

**IT IS SO ORDERED.**

Dated: August 14, 2023

_____
LAUREL BEELER
United States Magistrate Judge

---

[32] *See supra* Statement.